

FILED
Oct 02, 2020
10:45 AM(CT)
TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Robert G. Dennison | ) Docket No. 2020-07-0026 |
| | ) |
| v. | ) State File No. 52009-2019 |
| | ) |
| Packaging Corporation of America, et al. | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) |
| Compensation Claims | ) |
| Allen Phillips, Judge | ) |

---

### Affirmed and Remanded

---

The employee was working under mechanical equipment that engaged unexpectedly, resulting in severe crush injuries to the employee. After initially providing workers' compensation benefits, the employer denied the claim, asserting the affirmative defense of willful violation of a safety rule based on the employee's failure to comply with the employer's lockout/tagout policy. The employee acknowledged the existence and his violation of the safety rule but asserted the employer could not establish its defense because the employer did not engage in bone fide enforcement of the safety rule. The employee also contended he had a valid excuse for violating the rule. Following an expedited hearing, the trial court determined the employee was unlikely to prevail at trial and denied the employee's request for medical and temporary disability benefits. The court concluded that the employer had established bona fide enforcement of the safety rule and that the employee did not have a valid excuse for violating the rule. The employee has appealed. We affirm the trial court's decision and remand the case.

Judge David F. Hensley delivered the opinion of the Appeals Board in which Presiding Judge Timothy W. Conner and Judge Pele I. Godkin joined.

Spencer R. Barnes, Jackson, Tennessee, for the employee-appellant, Robert G. Dennison

Hailey H. David, Jackson, Tennessee, for the employer-appellee, Packaging Corporation of America

1

**Factual and Procedural Background**

Robert G. Dennison ("Employee") was sixty-four years of age at the time of his work-related injury. He had an extensive work history in machine shops and industrial mechanical maintenance when he began working for Packaging Corporation of America ("Employer") in January 2019. On July 19, 2019, Employee was instructed to assist a co-worker, Andrew Hale, in repairing an exit conveyor for a corrugator machine. Mr. Hale, who had begun working on the conveyor approximately fifteen minutes before Employee arrived at the conveyor, testified that prior to beginning his work he locked out the conveyor as he had been trained, and that he had removed the rollers at the front end of the conveyor. When Employee approached, Mr. Hale asked him to take the chain off the motor at the opposite end of the conveyor so Mr. Hale could move the conveyor belt more freely and pull it back into place. Employee testified that he looked at the front end of the conveyor and saw that it was locked out, adding that there was not enough room for a second lock on the conveyor. He then walked to the opposite end of the conveyor and crawled under the "corrugator stacker" for easier access to the conveyor motor and chain, stating that he "had to get down on [his] knees to get to [the chain] and [he] removed two [rollers] and started removing the master link." He did not lock out the stacker before beginning his work. As he was removing the master link, another employee, who was unaware Employee was underneath the stacker, energized the equipment and the stacker came down on top of Employee, severely injuring him.[1]

Employer initially provided both medical and temporary disability benefits. However, after performing an investigation of the workplace accident, Employer filed a notice of denial of Employee's claim based upon Tennessee Code Annotated section 50-6-110(a) (2019), which provides, in part, that

No compensation shall be allowed for an injury or death due to:

(1) The employee's willful misconduct; [or]

. . . .

(4) The employee's willful failure or refusal to use a safety device[.]

Employee was terminated as a result of his violation of Employer's lockout/tagout policy.

Approximately three months after Employee began working for Employer, and three months prior to Employee's July 2019 workplace accident, he was disciplined for failing to follow Employer's lockout/tagout policy for a machine on which he was working.

---

[1] The nature and degree of Employee's injuries and the medical treatment he received for those injuries are not in dispute in this appeal.

The machine functioned very similarly to the stacker that caused his July 2019 injuries. As a result of his April 2019 violation of Employer's lockout/tagout policy, he was suspended for three days and provided a written disciplinary action that stated "[a]ny further lockout violation will result in termination."

There was no dispute at the expedited hearing that Employer had a lockout/tagout policy in place for the purpose of ensuring that machinery could not activate during service or maintenance operations as required by applicable federal regulations. Mr. Hale had locked out the conveyor on which he was working prior to Employee's accident, but he did not lock out the stacker, stating that the conveyor was the only equipment on which he was working. It is undisputed that when Employee crawled underneath the stacker to remove the chain from the conveyor motor, he did not lock out the stacker, and it was energized while he was underneath it.

Employee testified that, because Mr. Hale was the primary authorized person performing the repairs and was instructing him as to how he could assist with the repairs, it was Mr. Hale's responsibility to ensure his safety while he was assisting with the repair. Employee also testified that he had not been trained on the lockout procedure for the corrugator stacker and that, when he was given his initial orientation upon being hired, no one went through the stacker lockout/tagout procedure with him. Rather, he was given a policy manual during orientation that included Employer's lockout/tagout requirements. Employee contends that because he had not been trained specifically on the lockout procedure for the stacker and Mr. Hale was the primary authorized person for the work being done, he had a valid excuse for his failure to follow the procedure. Employee asserts his excuse negates Employer's affirmative defense, which is based upon his failure to comply with Employer's lockout/tagout policy. Employee also contends there was no bona fide enforcement of Employer's policy, and he testified to several instances in which he asserted the policy was not followed.

Employer called five witnesses to testify at the hearing: David Michael Good, Employer's quality manager; Adonis Beauregard, Employer's first shift supervisor; Andrew Hale, a maintenance technician; Harry Smith, the corrugator supervisor; and Nicholas Morris, Employer's maintenance manager. All these witnesses consistently testified that an individual employee's safety is his or her responsibility, regardless of what obligations a co-worker may have for locking out machinery. Employer's witnesses also testified that, in addition to the requirement that Employee place his lock on the conveyor, he should have locked out the stacker before going underneath it. Further, the testimony of these witnesses was consistent in expressing that, if Employee did not know how to lock out the stacker, it was his obligation to ask for guidance. Also, Employer's witnesses testified that discipline for violations of Employer's lockout/tagout policy was applied consistently, beginning with a three-day suspension for the first offense and termination for a second offense.

Citing *Mitchell v. Fayetteville Public Utilities*, 368 S.W.3d 442, 453 (Tenn. 2012), the trial court identified four elements necessary for an employer to establish a defense based upon an employee's willful misconduct or willful failure or refusal to use a safety device as contemplated in Tennessee Code Annotated sections 50-6-110(a) and (b): (1) the employee's actual, as opposed to constructive, notice of the rule or policy in question; (2) the employee's understanding of the danger involved in violating the rule; (3) the employer's bona fide enforcement of the rule; and (4) the employee's lack of a valid excuse for violating the rule. The trial court addressed each of these elements and determined that, based upon the evidence presented, Employee would not likely prevail at a hearing on the merits. The court denied Employee's request for benefits, and Employee has appealed.

## Standard of Review

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2019). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2019).

## Analysis

On appeal, Employee contends the trial court erred in two respects: (1) "in finding that there was bona fide enforcement of Employer's safety rule at issue," and (2) "in finding that Employee did not have a valid excuse for violating Employer's safety rule at issue." The dispositive issue is whether the preponderance of the evidence supports the trial court's determination that Employee would not likely prevail at a hearing on the merits. We conclude the preponderance of the evidence supports the trial court's determination.

In *Mitchell v. Fayetteville Public Utilities*, the Tennessee Supreme Court set out the framework under which an employer's affirmative defenses based on an employee's alleged safety violations must be analyzed. At a hearing on the merits, in order for an employer to establish the affirmative defenses of an employee's willful misconduct or willful failure or refusal to use a safety device, the employer must establish the following:

(1) the employee's actual, as opposed to constructive, notice of the rule; (2) the employee's understanding of the danger involved in violating the rule; (3) the employer's bona fide enforcement of the rule; and (4) the employee's lack of a valid excuse for violating the rule. *Mitchell*, 368 S.W.3d at 453; *see also Glasgow v. 31-W Insulation Co., Inc.*, No. 2017-05-0225, 2017 TN Wrk. Comp. App. Bd. LEXIS 51, at *13 (Tenn. Workers' Comp. App. Bd. Sept. 6, 2017).

In the present case, the trial court examined the evidence concerning each of these elements and concluded Employee would not likely prevail at a hearing on the merits. There is no dispute that Employee had actual knowledge of and violated Employer's lockout/tagout policy for the corrugator stacker under which he was located while working on the conveyor. Further, there is no dispute that Employee understood the danger in violating Employer's policy. What is disputed is whether Employer engaged in bona fide enforcement of its policy and whether Employee had a valid excuse for violating the policy.

Employee had been suspended for three days for a similar violation of Employer's lockout policy approximately three months prior to the July 2019 accident. In the April 2019 incident, Employee had failed to fully lock out the elevator, or lift bed, on a die cutter on which he was working. He does not dispute that he failed to fully lock out the elevator on that occasion or that he was disciplined for violating Employer's lockout policy.

Employee testified about numerous examples involving himself and/or co-workers that he alleges were violations of Employer's lockout/tagout policy. In his brief, Employee identifies twenty-one instances of what he describes as "examples of Employer's [lockout] policy not being uniformly applied, enforced, or followed." However, many of the examples cited are not instances evidencing a lack of enforcement of Employer's policy, but are instances suggesting Employee "was never made aware of" certain procedures or "was not trained" on the lockout procedure for specific equipment. Other examples note that Employee and his co-worker, Mr. Hale, were not "instructed or trained to identify and notify all affected associates of an impending lockout as specified in Employer's policy," and that Mr. Hale "confirmed that he had neither read . . . nor been made aware of" Employer's lockout policy applicable to "group lockouts." The examples include a cite to testimony by Employer's maintenance manager indicating that a review of "the hazardous energy control policy prior to a group lockout as required by [Employer's policy] [was] not actually done." Employee's failure to properly lock out the corrugator stacker under which he was located while working on the conveyor did not involve a "group lockout" of the stacker.

In short, the examples cited by Employee fall short of rebutting Employer's evidence of its bona fide enforcement of its lockout/tagout safety policy. Each of Employer's witnesses testified that Employer's enforcement of its policy was consistent and unbiased. We conclude from our review of the testimony that the preponderance of

the evidence supports the trial court's conclusion that Employer "consistently enforced the lockout/tagout rule in a bona fide fashion."

Employee's claim that he had a valid excuse for violating Employer's lockout/tagout policy relies on two assertions: (1) he had not been trained on the lockout procedure for the stacker involved in his accident; and (2) it was Mr. Hale's primary responsibility to lock out the machinery on which they were working. Each of Employer's witnesses testified that if a machine required maintenance, and the maintenance worker did not know the proper lockout procedure for the machine, he or she was instructed to review the paperwork available at each machine and to ask for assistance if he or she still did not understand the procedure. We do not find Employee's assertion that he was not trained on the lockout procedure for the stacker under which he was working constitutes a valid excuse for his failure to comply with Employer's lockout procedure for the stacker.

Finally, addressing Employee's assertion that Mr. Hale had the primary responsibility for locking out the stacker, we again find Employee's argument unpersuasive. The testimony of Employer's witnesses was consistent in expressing that every person was responsible for his or her own safety and was responsible for locking out any machinery on which he or she was working, regardless of whether another employee had already locked out other parts of the machinery. Mr. Hale testified Employee and he were working on two different pieces of equipment, stating that he "was working on the conveyer." He denied instructing Employee to go underneath the stacker and stated he had always worked from the other side of the conveyer, which did not require him to work under the stacker. He testified he did not expect Employee to go under the stacker when he asked Employee to remove the chain from the other end of the conveyer.

Employee chose to work on the conveyor from underneath the stacker rather than perform the work from the other side of the conveyor. Employee testified it was much easier to go underneath the stacker to get to the end of the conveyor and to reach the conveyor motor and chain. His decision to perform the work from underneath the stacker was his alone, and based on the evidence presented, he alone bore the responsibility for locking out the stacker. Employee testified that when he went underneath the stacker, he did not think there was a possibility it would come down on him because "it was turned off." When asked how he knew the stacker would not come back on he stated, "well, I don't. The operators were all standing right there." Based on the evidence presented, we conclude Employee's insistence that Mr. Hale had the primary responsibility for locking out the stacker did not establish a valid excuse for Employee's failure to follow Employer's lockout/tagout safety procedure.

## Conclusion

The preponderance of the evidence supports the trial court's determination that Employer exercised consistent, unbiased, and bona fide enforcement of its lockout/tagout

policy, and that Employee, who had actual knowledge of the policy and the dangers of not following the policy, did not establish a valid excuse for failing to follow the policy. Accordingly, we discern no error in the trial court's determination that Employee would not likely prevail at a hearing on the merits. We affirm the decision of the trial court and remand the case. Costs on appeal are taxed to Employee.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Robert G. Dennison | ) | Docket No. 2020-07-0026 |
| | ) | |
| v. | ) | State File No. 52009-2019 |
| | ) | |
| Packaging Corporation of America, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Allen Phillips, Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 2nd day of October, 2020.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Spencer R. Barnes<br>Kailey Morgado | | | | X | spence@morrisonandbarnes.com<br>kailey@morrisonandbarnes.com |
| Hailey H. David<br>Joanna Smith | | | | X | davidh@waldrophall.com<br>smithj@waldrophall.com |
| Allen Phillips, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov